Good morning, and may it please the Court. My name is Vinnie Varghese, and I represent the appellant, Mr. Nakibwe Superville, on this appeal, and represented him in the hearing below before Judge Weinstein. Mr. Superville was denied effective assistance of counsel in this case because he pleaded guilty due to the incorrect and objectively unreasonable advice that was provided by Howard Greenberg, namely that as long as he pleaded guilty, avoided jail, kept his headlong, he would avoid deportation. Based on this advice, ultimately led to him being picked up by ICE. The appellant, Mr. Superville, is asking the Court to reverse the decision below for three reasons. First, Rule 11 warnings aren't sufficient to cure ineffective assistance of counsel. This is a position that's been taken by the Fourth Circuit, the Fifth Circuit, and, as of a few weeks ago, the Eighth Circuit. The second point is that Judge Weinstein made his decision upon an incorrect factual determination that Mr. Superville was subject to the 10-year mandatory minimum, which he wasn't. And that belief pervaded the hearing. At one point, Judge Weinstein said he was appalled that we were even here, because he had given him eight days in jail, and now he's facing ten years. Next, and finally, Judge Weinstein incorrectly accredited Greenberg's testimony over that of our clients. We know that that was incorrect in light of what we've learned from the decision, which we supplemented in a 28-J letter from Judge Preska, based on the same facts. I don't know how you buttressed that. Judge Weinstein, who's been doing this for a while, saw the witnesses and heard them testify. You're saying that because Judge Preska made a different finding and there was a different factual scenario, that Weinstein clearly erred? Is that what you're saying? What I'm saying is, in light of the testimony that was given before Judge Preska, which is the same testimony that was given before, almost identical testimony before Judge Weinstein, he didn't take into consideration certain things. He called him learned counsel. That determination, Your Honor, Judge Wesley, is suspect. Judge Weinstein's determination, and all the years he's been doing it, because he called him, at one point, learned counsel. But yet, Mr. Greenberg has never filed a sentencing memorandum in his career. So because he was kind to Mr. Greenberg, that's clear. His factual findings are clearly erroneous. Is that it? No, Your Honor, that's not what I'm saying. What is it that you're saying? What I'm saying is, what we know in light of this, particularly Judge Weinstein credited Greenberg testimony that he would have advised him, as a matter of routine, about the plea case. That's what he's saying, because he said that Greenberg would have told him, and the Rule 11 warnings were sufficient. But, as it turned out, that was an incorrect statement. Wouldn't the right way to do this, though, would be to go back to Judge Weinstein and say there's new evidence, we have this other evidence from these proceedings in front of Judge Preska, we'd like to offer them to you to see whether this will change your mind? Because right now, you're having one trial judge's finding, which you want to use against this trial judge's finding, and we don't know what the record was before Judge Preska. Well, the transcripts are there, Your Honor, and certainly that is an option this Court could take. Well, we don't have the transcripts, but in any event, that's not in the record before us, what happened in front of Judge Preska, other than, you know, the summary in your letter. Yeah, I'm sorry. The point is, the point is, how can we second-guess Judge Weinstein's factual findings and credibility findings based on what might have happened in front of a different judge on what might have been a completely different record? We just don't know. Judge, I'm not asking to reverse solely on the basis of Judge Preska's decision. I'm just saying that's a supplemental letter. Judge Weinstein makes a finding that, in essence, that even if your client had been told would be deported instead of could be deported, he still would have gone to trial. Now, why is that clearly erroneous? He's, well, he didn't credit that. He didn't credit our client's sworn statement that he would have gone to trial had he been told he would have been deported. I understand that. So why is that clearly erroneous? Because that's not the standard, Judge. The criminal defense attorney has an obligation set forth by the Supreme Court to provide correct advice. That it must . . . We've been assuming error. We're assuming error now. Your client had to show that there was a reasonable probability that but for the errors, he would not have pleaded guilty and would have insisted on going to trial. Judge Weinstein did consider that question and said, I am not persuaded that he would have insisted on going to trial, given the warnings, including the magistrate judge, the district judge, the plea agreement. I think he would have gone to . . . he would have taken the plea anyway if counsel had not made the error. Why is that clearly erroneous? I want to address it because it's the equivocal warnings that were given at the plea agreement. The plea agreement itself, while it spoke about getting deported, said, the plea agreement may have consequences. No one can predict with certainty the effect of a defendant's conviction. Magistrate Judge Goh said, you could be deported. You could be subject to removal. Judge Weinstein at sentencing said, your plea in this case may result in your deportation. Now the best evidence . . . The plea agreement said, presumptively mandatory deportation. And it said that nobody else can predict with certainty what would happen. You know what's the best evidence . . . It's true though, right? I mean, there are instances when someone is subject to mandatory deportation who is not deported. I mean, it's one of the problems with saying . . . with doing a plea allocution and saying, you will be deported. I would be reluctant to say that to a defendant because I don't know that that's in fact going to happen. Well, Your Honor . . . Sometimes there's . . . I forget the terminology. You make an application to the government, particularly if you've been cooperating, and sometimes the government elects not to deport you. So that's why I'm loathe to say that a judge must say, you will be deported. Actually, Judge Wein . . . the best evidence to support the position that Judge Weinstein may have flipped on this is that he has changed his own warnings to say that you will . . . it's safe to assume that you will be deported. So Judge Weinstein himself, Your Honor, is now saying . . . That's because the Attorney General has changed his position. At the time of this plea agreement, there was . . . the Attorney General is exercising discretion with a vast number of individuals who are eligible for deportation. We actually had a discretionary calendar in this court where the Attorney General notified us that he did not intend to deport people who were actually subject to removal orders. And so, this is not . . . the fact that he could be deported didn't mean he was definitely going to be deported. This is not an incorrect statement of the law at the time that he took his plea. Actually, Your Honor, it was. Because based on . . . this is the same two charges that he . . . You're confusing whether the act . . . the legal consequence of his plea with the actuality of his deportment. That's what you're confusing. The fact that he was removable as a matter of law did not guarantee his removal is what I'm telling you. Judge, I actually disagree on that because the INA, under these two charges, the drug conspiracy and the money laundering with an excess amount of $10,000, this case was a million dollars, subjected him to mandatory deportation, same as Padilla. I understand that. I just told you that I agreed with you. But until the Attorney General and ICE issue a warrant for his removal, he isn't removed. Well, he was. I mean . . . Ultimately, he was. Yes. Because they were issued. But the fact that he was removable didn't mean he would be removed five years ago. Thank you. Even when you are subject to mandatory deportation, the government may elect not to deport you. Isn't that a possibility? The INA has taken that away from that kind of . . . The executive branch does not have discretion to elect not to deport you? Judge, that's an extreme. You're basing that . . . I mean, look at the language of Padilla, look at the language of Jaili, these cases that have come on. When you have these cases, the presumption is that you will be deportable. We'll hear from the government. You have two minutes for rebuttal. Would you speak to timeliness, Ms. Henry? Yes. Good morning, Your Honor. Thank you. With respect to timeliness, Your Honor, the government believes that the district court correctly found that the petition, in fact, was procedurally barred because it had not been filed within the one-year statute of limitations. The appellant is attempting to claim that the one-year period began to run in July of 2017 when he was taken into immigration custody, and that at that time is when he determined that he could be subject to deportation. But as Your Honors have pointed out, and the district court found, there are a number of ways in which the defendant knew long before that, as early as February of 2014, the time of his plea, that he could be subject to deportation as a result of his conviction. It was clear during the plea colloquy when the magistrate judge effectively said to him, as a result of pleading guilty, you could be subject to removal from the United States and denied citizenship and denied permission to be readmitted to the United States, and the defendant stated under oath that he, in fact, understood those consequences. Even before the magistrate judge stated that to him, in a written plea agreement, it was a consequence, and that not only could deportation be a consequence of his plea, but that he agreed that he was willing to go forward with that plea, even if the consequence was automatic removal. And so as early as February of 2014, he was aware that he was subject to deportation. Even if we agree that the 2055 motion is untimely, what about the quorum nobis, the alternative request for quorum nobis relief? That's not subject to the one-year limitation, correct? It's not subject to the one-year limitation, Your Honor, but I think that the idea is that the defendant should have been diligently pursuing his rights, and if, in fact, he was aware of the potential of deportation in February of 2014 and chose not to file a motion regarding the same until three years later, arguably, it could be said that he was not diligently pursuing his rights. Well, arguably, it could be said, or that's what you're arguing? Yes, that is what I'm arguing, Your Honor. Okay. Why don't you get to the merits, then? Certainly, Your Honor. With respect to ineffective assistance, in this case, again, as the district court correctly found, there is nothing in the record that would show that the defendant would not have— Is it ineffective assistance to say you could be deported in the current state of affairs? At the time that the defendant was considering his plea option, it was not an incorrect statement to say that he could have been deported as a result of deportation. Even if it's mandatory deportation? Yes, for the reasons that Your Honor stated previously, which is that, again, while he could be removed from the United States, there are circumstances under which he might not be, and it is accurate to say to a criminal defendant that is a possibility. That defendant would then weigh that possibility and determine whether or not to take a plea or to go to trial. District court didn't decide the issue anyway, right? Whether there was error, it assumed error. I think that the district court declined to determine whether or not there was deficient performance and instead went straight to the prejudice analysis, and under that analysis determined that there was nothing in the record to show that the defendant would have gone to trial. What about the impact of the case before Judge Preska? How do you respond to that argument? That it has no relevance to the case at bar here. First, because as the court noted, there is no record here before this court regarding what went on before Judge Preska, but even still in this case, the district court made specific credibility findings with respect to the defendant's testimony about what his client . . . excuse me, what his attorney told him and what he knew. I think that based on this record, whatever occurred before Judge Preska is irrelevant. Did Judge Weinstein make an error with respect to the mandatory minimum, the ten-year mandatory minimum? He did rely on that. He did reference the mandatory minimum, but at the time that the defendant was considering taking a plea, he was in fact facing a ten-year mandatory minimum. In addition, I just want to address a point that was made regarding the defendant's eligibility for safety valve relief. Again, at the time of the plea in 2014, the defendant would not have been aware that he would have been eligible for safety valve relief, and so as far as he knew, he was facing a ten-year mandatory minimum. I think Judge Weinstein's decision to advise the defendant during the evidentiary hearing that in fact a ten-year mandatory minimum was authorized under the statute was appropriate. If your honors have no further questions, I will cede my time and rest on the briefs. Thank you. Thank you. Where are the rebuttals? Why don't you start with the timeliness? Sure. Judge, on that issue, it goes right to the heart of why he would need a lawyer. In this case, he exercised reasonable diligence. He relied on his own attorney who gave him incorrect advice, then sought a second opinion. I'm not sure how much more diligence Mr. Superville could have exhibited between that point, and before Magistrate Judge Goh and Judge Weinstein, all were not inconsistent with what Mr. Greenberg and the other attorney had told him, that yes, there was a possibility that he could be deported, but not that he would be deported. So again, that's the issue as to timeliness. So when he found out about it, when he knew that he would be deported, was when he was picked up by ICE. Just in terms of the transcript before the court, in the supplemental letter we did cite to the specific pages of the, in the federal, our FRAP 28-J letter, we did cite to the specific pages of Judge Preska's transcript. So they are available for the court if the court wishes to look at it. Now, you asked the question of the government, was it incorrect, it is the defense position that even at the time of taking the plea, the language that he could, may, all of that, particularly in a case where there's a, that are aggravated felonies under the immigration law, that that is an incorrect statement of law. Are all aggravated felons immediately deported upon their release? Upon their, sorry? Are all aggravated felons immediately deported upon their release from their state or federal incarceration and or their completion of their supervised release? No, they're not immediately because there's a process, but then there is no relief under the immigration law for somebody who's facing mandatory deportation. Thank you. Will reserve decision.